Good morning. May it please the court. My name is Kelsey Gasling. My partner, Andrew Snow, and I are supervised law students from Boston College Law School, appearing under the supervision of Kari Hong, who is seated at council table. We represent petitioner Zaldy Myers. There are three reasons to overturn the BIA. First, at step one, Johnson v. INS has been called into question by Supreme Court precedent. In 1992, Johnson was decided without the benefit of the categorical approach. It focused on a defendant's conduct instead of statutory elements. In 2016, Mathis said that if some convictions would count and some convictions would not, quote, depending on the facts of the case, end quote, that statute cannot be a predicate to portability ground. In 2015, Malooly explained that only a statute's elements, not, quote, some connection to drugs indirectly, end quote, will determine if a statute relates to a controlled substance. There is no doubt that many travel act convictions do not involve drugs. This proves that there is no essential element requiring the existence and identification of a specific drug. We do not ask this court to overturn Johnson because, in Mathis and in Malooly, the Supreme Court already did. We simply ask the court to recognize that reality. Under Miller v. Gammey, this three-judge panel has the authority to do so. Second, without having to reach Johnson, the Travel Act is indivisible. A divisible statute exists when the jury must agree unanimously on the fact critical to the federal statute. It is not uncommon for Federal Circuit courts to interpret the same Federal statute as having different elements. Ginsburg-Massey, excuse me. Who has the phone? Please take it out and turn it off. Thank you. Thank you. It is not uncommon for Federal Circuit courts to interpret the same Federal statute as having different elements. We look to the Fifth Circuit here because the law in the place of conviction determines what conduct a jury must find to be true. See, now that runs against my thinking that I expressed in the prior case that we should not be – now, this is even worse because this isn't even a statute. This is actually Fifth Circuit juror instructions compared to other circuits' juror instructions and whether or not they require unanimity or not require unanimity. I mean, we shouldn't be interpreting this statute differently in each State or each circuit court. Respectfully, Your Honor, my best answer in support of this is that it is the Court's general practice to look to the law in the place of conviction to determine conviction elements. Mathis instructs to look to the statute, then cases, and then jury instructions to understand what are elements. This is supported by the Nicholas case from the Eighth Circuit. The Fifth Circuit's jury instructions were revised in 2015 after Mr. Meyer's conviction. They are intentionally different from other circuits. The government gives no case against this practice. Though there is no perfect case supporting it, the government has the burden to prove deportability here. Malooly notes that plea agreements permit noncitizens to enter safe harbor guilty pleas that do not expose the alien defendant to the risk of immigration sanctions. The government got the benefit of Mr. Meyer's plea agreement in the Fifth Circuit. It should be bound by that circuit's determination that no immigration consequences attach. In the Fifth Circuit, jurors are instructed that the Travel Act has only three essential elements, interstate travel, with the intent to promote an unlawful activity, and an overt act to further that intent. Now, here we have a superseding information, which is referenced in the plea agreement. Which Mr. Meyer signed, and that states a specific unlawful activity, namely a controlled substance offense. So how do you respond to the argument that the Travel Act is divisible and the unlawful activity is an element of the offense here? Well, first, we do not reach the superseding information if the Court agrees that the Travel Act is indivisible. As Mathis explained, if a conviction like this one is broader than the generic offense, it is not a match, quote, even if the defendant's actual conduct, i.e., the facts of the crime, fits within the generic offense's boundaries, unquote. Here, the mere mention of a drug in a charging document does not make it an element of the offense. For example, in Harbin, the Second Circuit held that the mention of cocaine on a charging document did not narrow the noncitizen's conviction under a New York offense for sale of a controlled substance. That is because the specific drug was not an element of the offense. The Court explained that a prosecutor may identify the murder victim or the time and place of the crime in the charging documents, but those are still facts, not elements. Here, the conviction record could only identify whether Mr. Myers was convicted under subsection A-1, A-2, or A-3. It cannot do any more. I confess I have enough difficulty keeping the Ninth Circuit case law straight, so here I'm struggling with another circuit. I came in with the understanding that, at least in this circuit, our case law requires a specification of the underlying act, but that doesn't matter anymore because we had a conviction from the Fifth Circuit. I did look at Fifth Circuit case law, and this is one of those things where I'm mixing the cases up, so I apologize, but it seemed to me that there was a case called The Fifth Circuit does suggest that contrary, perhaps, to the jury instructions which don't, the standard jury instructions which don't have any force of law, that there would be a basis to hold the Travel Act as divisible under Fifth Circuit law. Now, if I'm citing the wrong case from my notes, I apologize, but can you tell me why the Rodriguez case doesn't support that proposition? Your Honor, my best concern is that I don't have that case in front of me, but from the Fifth Circuit, Millett, a Fifth Circuit jury did not have to agree which one of multiple acts was a singular predicate unlawful activity for a Travel Act conviction. The court held that the indictment properly identified multiple unlawful activities. The jurors only had to agree that the underlying activity was extortionate in nature. Does the jurors in the Fifth Circuit have to agree that it was an unlawful activity? Fifth Circuit jurors are not directed to agree on which unlawful activity is involved. It is legally significant here that the term unlawful activity is not in brackets in the Fifth Circuit jury instructions. These instructions also differ from the California instructions at issue in Coronado and Martinez-Lopez. There, California's jury instructions read, quote, bracket, insert controlled substance, end bracket, end quote. These brackets identify the specific controlled substance to be an essential element of the offense. Martinez-Lopez explained that blanks in the jury instructions require a jury to identify and unanimously agree on a particular controlled substance. Because Fifth Circuit jurors are not directed to agree on which unlawful activity is A persuasive illustration of this jury non-unanimity is Brecht. There, a Second Circuit jury was instructed that the unlawful activity to a travel act conviction was extortion and commercial bribery. The jury was not required to agree whether one or the other or both unlawful activities were involved. This shows again that unlawful activity was a means and not an element of the offense. Third, the travel act is a racketeering offense. Unlawful activity is not an element. The minimum conduct culpable to violate this statute could be gambling or untaxed liquor. As such, the travel act is not an aggravated felony and it is not a CIMT. If the court agrees that the travel act is not a controlled substance offense, it also may reach and reverse the other two deportability grounds that the IJ sustained in Mr. Myers' removal order. Mr. Myers presented both of these issues in his brief to the BIA. The BIA elected not to reach them, saying it was unnecessary to do so. Remand is not needed on the aggravated felony. In Mondo Jano Real, this court rejected a government request to remand an aggravated felony issue because the BIA has no expertise and this court has de novo review over interpretations of criminal law. On the CIMT, remand also is not needed because the government has not offered any reason why the BIA would not follow its existing precedent that gambling and untaxed liquor are not CIMTs. And of the cases that you cite in your brief, which is — which one is your home-run case that we — that we can decide the CIMT issue even though the BIA has not reached that issue? That would be Nunez and Quintero Salazar. Okay. We'll — Okay. We have the cite from your brief, yeah. Mr. Myers exhausted this claim in his brief at AR-36. He argued that, quote, the minimum conduct culpable, end quote, under the Travel Act is overbroad to a generic CIMT offense. Under Vizcara-Ayala, this general claim of overbreath adequately exhausts the specific claim presented to this court that the Travel Act's predicate conduct of gambling and untaxed liquor makes it overbroad as a CIMT. If there are no further questions, may I reserve my time? Thank you, Counsel. Thank you. May it please the Court, Sarah Bird on behalf of the respondent, the Attorney General. This Court should deny the petition for review because the Board correctly determined that Mr. Myers' conviction under the Travel Act was a violation of a law relating to a controlled substance. I think to start out, some of the preliminary things we actually agree on. So we agree that he was convicted under the Travel Act, and we agree that the Travel Act is divisible under subsection A into subsections 1 through 3. So here it's A3. And we also agree generally as to the basic set of elements for the Travel Act that it intent to promote or carry on an unlawful activity, and third, an act in furtherance of that specific intent. So this really hinges on whether that unlawful activity definition in subsection B is divisible as an element or as merely a means. And that's obviously where we disagree. As I mentioned, that second element is specific intent to promote or carry on an unlawful activity. In order to prove that specific intent, the government must allege and prove the specific unlawful activity that was intended. But suppose there are multiple alleged unlawful activities, and if the Fifth Circuit would say, as suggested by the forum jury instructions, that you don't have to — the jury doesn't have to agree on one or a drug offense, then can we say it's divisible if the jury doesn't actually have to agree on an element, but simply has to agree that there was an unlawful act? If the jury only had to agree that there was an unlawful act and didn't have to agree which one, then it wouldn't be an element. But I don't think that's the case here. Here — well, first of all, to step back. But we don't have a jury that agrees. And we're dealing with the categorical approach. So the question seems to be, what does the Fifth Circuit require? If it had come to — if a defendant is convicted without a jury filling in a blank as to what the unlawful act is and without instructions that specify what the unlawful act is, how can we know? Well, I think that the Fifth Circuit does require the unlawful act to be specified, and it is an element in the Fifth Circuit. They specify unlawful act, but they don't specify what specific conduct is the unlawful act. Well, then, the Fifth Circuit jury instructions say, unlawful activity is defined by 18 U.S.C. 1952b. The appropriate one, and then parentheses S, should be specified and addressed as necessary in the instructions provided to the jury. So we're really arguing over whether that parentheses S means that you can have multiple ones. And that's simply not clear. I think both in the Fifth Circuit and in every other circuit, the unlawful act is an element that must be specified. The Fifth Circuit merely allows for plural multiple counts. So you could have multiple counts and a different unlawful act for each count. But could the unlawful act not be controlled substance-related? Well, certainly, there are convictions under the Travel Act where the unlawful act is bribery or extortion. But how do you know whether it's the deportable offense as a controlled substance? Because it's an element that must be specified. And under Mathis, here, Mathis gives us a number of different tools to distinguish between elements and means. And one of those tools, whereas here we don't have a State case that says exactly post-Mathis, these are elements, not means, we can look to the actual conviction records in the case. Mathis allows us to peek at those. Peek thing. I don't know what that means. I know Judge Kaczynski used that language. And I'm just not sure what that means, because we're actually really not, under the categorical approach, supposed to go look at the underlying conviction. Well, we're certainly not supposed to look at the facts involved.   I understand. And it's funny, it's just a funny word, peek. But we're peeking to see whether the charge was a disjunctive charge, or whether it specifically specified one of the enumerated activities, unlawful activities. So here... Peeking to look if drugs were involved? We're not... Well, here, we don't need to look to find out which specific drug was involved, but we do need to find out whether the unlawful activity that was charged, and would have been proven, and that he pled guilty to, was the specific unlawful activity that relates to controlled substances as defined in the Controlled Substance Act. So we can look, and we can see that to the exclusion of all other unlawful activities, the only one that was charged here was relating to controlled substances. It was specifically, it was a business enterprise involving controlled substances. And we have Fifth Circuit case law saying that for those unlawful activities, there are few that require a business enterprise. The evidence, in order to sustain the conviction, the evidence has to be sufficient to show that it was a continuous action, not just one possession, but continuous enterprise, a business involving the controlled substances. And that's very different than some of the other unlawful activities, like extortion, which they don't, the government, the prosecution wouldn't have to show that business enterprise. So depending on which unlawful activity is alleged, the burden of proof on the prosecution is very different. And the prosecution does specifically have to show a business enterprise involving controlled substance and the specific intent to further that business enterprise involving a controlled substance, which would be very different than the specific intent required to further bribery or extortion. The only time that I've seen two of them charged together was bribery and extortion because those are somewhat similar. And that's in that Second Circuit case that is cited in the 28J letter. And I think actually that case tends to show that it is an element. Of course, now we're getting into the Second Circuit where the jury instructions make clear that it's an element as compared to the Fifth. But even in that case, it was commercial bribery and extortion. And the Second Circuit held that the evidence was not — well, they basically held commercial bribery doesn't fall within the generic definition of bribery, which the Supreme Court has subsequently said it does for purposes of the Travel Act. But at that time they held you can't sustain a Travel Act conviction for the commercial bribery unlawful activity, but you can for the extortion. And instead of saying, and since it doesn't matter whether the jury agreed, we'll just sustain the conviction, they reversed and sent it back because the jury had to agree on specifically on the extortion and they couldn't tell. If it didn't matter and the jury didn't have to agree on which unlawful act was involved, they wouldn't have had to send it back because extortion, they specifically say, the evidence was sufficient to sustain the conviction for the extortion unlawful activity. And that kind of brings us back to the actual circuit split here. I think that the Fifth Circuit, what's different about the Fifth Circuit is not whether or not the unlawful activity is an element, but whether or not that element is defined by state law or by the generic federal definition. So the Fifth Circuit decision that gets cited a lot is the Conway decision where the unlawful activity and the Fifth Circuit said that it was not reversible error that they failed to instruct the jury as to the Maryland definition of arson because the jury was given, had the generic definition of arson. And arson is a little different than what we have here because it says the unlawful activity is arson in violation of the laws of the state in which committed or of the United States. So the specific circuit split is whether the generic definition of the unlawful activity is enough or whether they have to give the specific elements in that state where it's convicted or where it's committed. And that's where the Fifth Circuit differs. And the D.C. Circuit explained this really well in Jones. It goes into where that circuit split is and says, in any case, the unlawful activity, at least the generic, is an element. And most circuits require the specific state definition. So that circuit split between whether it's the generic definition or the state definition is irrelevant here because the generic definition is enough. Here, the generic, actually, there isn't even a state definition of controlled substances because it specifically cites. Well, actually, a lot of states, including California, lists their controlled substances. Right. But their list isn't the one that's incorporated into the federal. And here, we don't have that issue of a mix match because it's a Federal Controlled Substance Act unlawful activity for the Travel Act and the INA refers to the Federal Controlled Substance Act. So there is no mix match there. They're categorically the same. And we would argue that Johnson, this case, this Court's 1992 case, controls and it can take you certainly have to look at it to make sure it's still right under Mathis. But we would say that it is because the controlled substance is an element. I think Judge Katzman has a question. Your time is running short. But with the panel's agreement, I'd just like to ask briefly a couple of questions about the stop time rule. Okay. Yeah. So was Myers served in 2013 or 2015? It appears to me based, I looked just last night at the NTA and I'm looking for my notes here. It looks to me like he was served in, well, the NTA doesn't have a service date. It looks like he signed it in 2015 and yet it looks like the DHS created the NTA in 2013 but then took a while to serve it, like a couple years to serve it. How do we know? Is there a stamp on it for service? That's when he signed it. So we know he was served at least in 2015. 2015. But what do we know about 2013? It could have just sat in their files. If you look at administrative record 169, that's when it's dated by the officer who created it. Right. But it could have just sat in the office. Yeah. I think it's likely that it did. And that's why we argue that what stops the time here is the commission of the offense. That's not what the board said. But that is what the immigration judge said. And you're right. I think the board made a mistake here. They got confused by those dates on the NTA. Yeah. But we have to review what the board did. Well, you have the board has the only the immigration judge can make the findings of fact. But the immigration judge made the correct finding of fact here. The board made a mistake as to dates. We're reviewing the BIA decision. Correct. But in this case, it's a harmless error because it doesn't even if you sent it back for the board, assuming that you agree with us. It seems like perhaps wasted effort if we agree with your sense of the facts. But I don't know that the law permits us to say harmless error with administrative review. I think it does when there would. No, I think there's a different standard. I think we'd love it in lots of cases. We could clear off the docket. But so I think you know where we're coming from or what our concern is. And we know what position you've offered and right. Good enough for government work. All right. Thank you, counsel. And I'll give the law students an extra two minutes because government counsel took. Thank you, Your Honors. I have two points. First, Mr. Myers was never convicted of a drug crime. He was charged and convicted solely under the Travel Act. The possession statute describes the intended means of promoting an unlawful activity. That is not an element. Mathis tells us to start with the statute and then turn to case law and then jury instructions to figure out what is an element. Only as a last resort do we take a peek at the record to see if the elements are on the charging document. My second point is that if the court agrees with us on all three issues, this court can terminate proceedings without any remand. Realistically, termination moots the stop time issue. If there are no further questions. Let's go back to what we've really been talking about for most of the last 15 or 20 minutes. What should we look at? And we've heard from your colleague about this, too. But what should we look at to satisfy ourselves as to what would be required in the Fifth Circuit? If there were a trial, we've heard from the government that, in fact, the differentiation or what makes Fifth Circuit different from others doesn't have to do with whether the unlawful act has to be specified. It has to do with whether you look to the State elements or the precise State crime elements or to a more generic version. And we're in a quandary here because we've got to figure out, okay, what would the Fifth Circuit do if it was presented with a case where there had been a conviction for violation of the Travel Act, based on instructions that appear to have been drawn from the forum jury instructions that did not specify what the unlawful act was, and there were more than one unlawful act at issue? Would the Fifth Circuit say, well, that's an element, and so all jurors have to agree upon what the crime was? It's not good enough that a half-dozen jurors decided he was guilty of a drug crime, and another half-dozen agreed? So that's the question we're trying to resolve. And what I'm asking you for is what would you point us to from the Fifth Circuit that would help us answer that question? Your Honor, I would point you to Millett. Millett. In Millett, a Fifth Circuit jury did not have to agree on which one of the multiple acts was a singular predicate unlawful activity for a Travel Act conviction. The Court held there that the indictment properly identified multiple unlawful activities, but the jurors only had to agree the underlying activity was extortion. The Court held that there was no need to be, quote, a conviction of the underlying predicate unlawful activity, but this is not the law. Well, I need to go out and look at Millett, but I heard what you just said, that the jury had to agree that it was extortion. I mean, was there – do you have multiple unlawful acts at issue there, or is the problem what the government appeared to suggest as to what the definition of extortion should be? Could you repeat that last part? It came out kind of mangled, so let's try this again. Let's do it in pieces. In Millett, were there multiple unlawful acts at issue? Yes, there were. Okay. And the case apparently says that the jury had to agree just that it was extortion. Was – what was – I mean, you just told me there were multiple unlawful acts. Was there something other than extortion, or what they were talking about is multiple variations as to what the elements of extortion were? I mean, the government's argument – and I may be digging deeper into the case than you know offhand, and that's fine. We'll all go back and look at the case. But the government seems to be saying what Millett addresses, or what the Fifth Circuit is different about, because they don't recall what we asked her about Millett in particular, that you can have a generic definition of a crime. I take it it's extortion. And you can also have the particular requirements of one of the States. So Fifth Circuit, let's pretend it's Louisiana. So Louisiana has an extortion statute that maybe is a little different, and it could be that what the Fifth Circuit is saying, okay, this different definition is good enough, and so you've got to agree on that. Our problem is whether there's a different unlawful act. And so I have no idea what answer you can give to this question. But so my question really, is there something in particular within Millett that you would point us to that will help us answer the question that we have to deal with? Good luck with that. Give me a doozy. So I would say that in Millett, as I stated earlier, there were multiple unlawful activities, and the jurors were directed to try and figure out which one they would prosecute on. But even without looking to Millett, I would say that the cases of Nicholas and Brecht both show you what the Fifth Circuit would do in this situation. In Nicholas specifically, eight circuits were mentioned to construe a federal statute to be a general intent crime, and the Ninth Circuit construed it to be specific intent. In Footnote 3, Nicholas cites to the Ninth Circuit case U.S. v. Twine, which also recognizes that different federal circuits interpret the same federal statutes as having different elements. In Brecht, a jury convicted a business manager who got a kickback. The jury was told that both extortion and commercial bribery were predicate unlawful activities to a Travel Act offense. As my partner said, the Second Circuit reversed because the New York commercial bribery law was overbroad to the Travel Act's definition of bribery. But they both, the jurors were given both to decide on. Either one could have satisfied the unlawful activity. Without a requirement of unanimity. Yes, without a requirement of unanimity. Okay. I think that's a good answer. You've given us some homework. Thank you, sir. Thank you. But with that, I'll submit the case. All right. Thank you very much, counsel. Again, excellent arguments on both sides. We really appreciate it. And we very much appreciate you, Ms. Hong, for bringing your students out here. Thank you. And all the fine work. Yes. All the fine work that goes into this. So, Myers, these sessions will be submitted. And we'll take up U.S. v. Lawson.
judges: Wardlaw, Clifton, Katzmann